```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                        :
MILDRED SHAW,                           :   CASE NO. 1:17-cv-685
                                        :
        Plaintiff,                      :
                                        :
    vs.                                 :   OPINION & ORDER
                                        :   [Resolving Docs. 17, 36, 39]
HILTON GARDEN INN, et al.,              :
                                        :
        Defendants.                     :
                                        :
------------------------------------------------------
```

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

This is a slip-and-fall case. Plaintiff Mildred Shaw says she suffered injuries after slipping and falling on a wet floor at the Downtown Cleveland Hilton Garden Inn. Shaw sues with claims of negligence, nuisance, and wanton and willful conduct against Defendants, Hilton Garden Inn and Hotel 1100 Carnegie Opco LP ("Hotel 1100").

Defendant Hotel 1100[1] now moves for summary judgment. Plaintiff opposes.[2] For the following reasons, the Court **GRANTS** Defendant's motion for summary judgment.

## I. BACKGROUND

On September 21, 2016, Plaintiff Shaw visited the Downtown Cleveland Hilton Garden Inn.[3] Shaw came to visit her former boss and personal friend, Kim Rataj, who worked at the hotel.[4] She arrived at the hotel sometime between 10:30 am and 11:00 am, right around the time the hotel

---

[1] Defendant Hotel 1100 argues that Hilton Garden Inn is not an appropriate defendant because it is only a trade name and not a legal entity. Plaintiff has not opposed removing Hilton Garden Inn as a defendant. *See* Doc. 17 at 2 n.1 The Court therefore dismisses this suit against Hilton Garden Inn. *See Bailey v. E. Liverpool City Hosp.*, No. 4:14-cv-2809, 2015 U.S. Dist. LEXIS 115504, at *10-11 (N.D. Ohio Aug. 31, 2015).
[2] Doc. 36.
[3] Doc. 17-7 at 17:6-21.
[4] *Id.*

Case No. 1:17-cv-685
Gwin, J.

stopped serving breakfast.[5] She walked through a kitchen hallway to get to Rataj's office.[6] She did not check in at the front desk or wait for an employee to escort her.[7] Rataj's office and the kitchen hallway were in an employees-only area.[8] The entrance was marked with a sign labeled "Associates Only."[9]

Because the hotel had just served breakfast, the kitchen employees had just mopped the kitchen hallway floor.[10] As she walked through the kitchen hallway, Plaintiff Shaw slipped on the wet floor.[11] Hotel employees called paramedics and cared for Plaintiff Shaw until they arrived.[12]

Hotel employees did not make Plaintiff Shaw walk across the wet floor,[13] or give her explicit permission to do so.[14] The parties, however, dispute whether hotel employees placed a "wet floor" sign in the kitchen hallway.[15]

A few days before her visit, Plaintiff Shaw had a telephone conversation with Rataj.[16] During the call, Shaw discovered that Rataj would be retiring from the hotel.[17] Shaw told Rataj that she would visit Rataj before Rataj left employment at the hotel.[18] However, Shaw and Rataj did not agree to any specific date, time, or location for their meeting.[19]

---

[5] Doc. 17-6 at 104:4-20. Shaw declares that she parked in the hotel's parking garage and that the "parking fee was indeed paid." Doc. 36-1 at ¶ 5.
[6] Doc. 17-6 at 23:7-25, 26:3-9.
[7] *Id.* at 22:16-23:25.
[8] *Id.* at 23:1-6, 34:9-35:8; Doc. 17-7 at 6:6-11, 32:24-34:2; Doc. 17-9 at 43:16-45:5; Doc. 17-12 at 7:18-23; Doc. 17-13 at 45:2-8, 60:23-61:11; Doc. 17-1 at ¶ 20.
[9] Doc. 17-8; Doc. 17-7 at 22:6-15.
[10] Doc. 17-6 at 33:1-36:6.
[11] *Id.* at 38:3-15.
[12] *Id.* at 45:2-25; Doc. 17-12 at 30:9-12; Doc. 17-14 at 27:12-28:8; Doc. 17-15.
[13] Doc. 17-6 at 21:13-18.
[14] *Id.* at 53:2-54:1; Doc. 17-7 at 40:18-41:1; Doc. 17-1 at ¶ 22.
[15] *See* Doc. 17 at 7; Doc. 36 at 2.
[16] Doc. 17-6 at 18:11-20:17.
[17] *Id.* at 19:21-20:6.
[18] *Id.*
[19] *Id.* at 19:21-20:17; Doc. 17-7 at 10:24-13:1.

At the time of Shaw's fall, hotel policy permitted employees' visitors but "discouraged" them.[20] Visitors had to check in at the front desk.[21] Under employee rules, employees then had to meet their visitors at the front desk.[22] Otherwise, visitors had to be escorted to the employees they were visiting.[23] Visitors were not permitted to enter employees-only areas without prior permission or an escort.[24]

The hotel policy's sought to promote safety by ensuring that unknown and unaccounted-for persons would not wander through the hotel and enter restricted areas.[25] The hotel manager states that the hotel strictly enforced the policy[26] and communicated the policy to all hotel employees.[27] Hotel employees were required to sign a statement verifying receipt, review, and understanding of the policy.[28] As a former hotel housekeeping supervisor until 2015,[29] Plaintiff Shaw would have been subject to a similar visitor policy during her employment.[30]

Plaintiff Shaw also testified to her knowledge of the kitchen hallway conditions. Plaintiff Shaw testified that she knew the kitchen hallway area was for employees only.[31] When she was a hotel employee, Shaw frequently walked through the kitchen hallway daily and met with Rataj in Rataj's office.[32] Shaw testified that servers and cooks routinely carried food and drinks through

---

[20] Doc. 17-3 at 28 ("Family and friends of associates are discouraged from visiting during working hours."); Doc. 17-4 at 28 (same). Before June 2015, the hotel policy was similar to the current policy, except that it prohibited visitors unless the hotel gave prior permission. Doc. 17-2 at 12. The hotel amended the policy in June 2015 to its current state. Doc. 17-1 at ¶¶ 6-10; *see also* Doc. 17-3.
[21] Doc. 17-3 at 28; Doc. 17-4 at 28.
[22] Doc. 17-3 at 28; Doc. 17-4 at 28.
[23] Doc. 17-3 at 28; Doc. 17-4 at 28.
[24] Doc. 17-3 at 28; Doc. 17-4 at 28.
[25] Doc. 17-1 at ¶ 16.
[26] *Id.* at ¶ 17; *see also* Doc. 17-7 at 35:13-37:16.
[27] Doc. 17-1 at ¶ 18; *see also* Doc. 17-7 at 36:11-17.
[28] Doc. 17-1 at ¶¶ 6, 18; Doc. 17-5 at 60:12-22.
[29] Doc. 17-6 at 10:10-11:5.
[30] Doc. 17-1 at ¶ 18; Doc. 17-5 at 60:12-22.
[31] *Id.* at 35:6-8; *see also* Doc. 17-9 at 43:16-23.
[32] Doc. 17-6 at 30:2-23.

the kitchen hallway and left spills.[33] She remembered that it was "not unusual" for kitchen employees to routinely mop the kitchen hallway after breakfast.[34]

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[35] The moving party must first demonstrate that there is an absence of a genuine dispute as to a material fact entitling it to judgment.[36] Once the moving party has done so, the non-moving party must set forth specific facts in the record—not its allegations or denials in pleadings—showing a triable issue.[37] The existence of some doubt as to the material facts is insufficient to defeat a motion for summary judgment.[38] But the Court views the facts and all reasonable inferences from those facts in favor of the non-moving party.[39]

When parties present competing versions of the facts on summary judgment, a district court adopts the non-movant's version of the facts unless the record before the court directly contradicts that version.[40] Otherwise, a district court does not weigh competing evidence or make credibility determinations.[41]

## III. ANALYSIS

Plaintiff brings claims of negligence (Counts 1 and 2); nuisance (Count 3); and willful or wanton conduct (Count 4). The Court grants summary judgment for Defendant on all counts.

---

[33] Doc. 17-7 at 13:24-14:18.
[34] Doc. 17-6 at 33:5-17; *see also* id. at 36:1:10. Other employees testified that hotel employees routinely mopped the kitchen hallway floor after breakfast. Doc. 17-7 at 39:3-24; Doc. 17-9 at 46:12-24.
[35] *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 580 (6th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).
[36] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[37] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[38] *Id.* at 586.
[39] *Killion*, 761 F.3d at 580 (internal citations omitted).
[40] *See Scott v. Harris*, 550 U.S. 372, 380 (2007).
[41] *Koren v. Ohio Bell Tel. Co.*, 894 F. Supp. 2d 1032, 1037 (N.D. Ohio 2012) (citing *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 470 (6th Cir. 2012)).

Case No. 1:17-cv-685
Gwin, J.

**A. Willful and Wanton Conduct (Count 4)**

There is no genuine dispute of material fact that Defendant Hotel 1100 did not act willfully or wantonly towards Plaintiff Shaw.

Willful conduct "'involves an intent, purpose or design to injure.'"[42] Wanton conduct involves the failure to exercise "'any care whatsoever toward those to whom [one] owes a duty of care, and . . . occurs under circumstances in which there is great probability that harm will result.'"[43] "[M]ere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tort-feasor."[44]

Hotel 1100 points to evidence showing it did not act willfully or wantonly towards Plaintiff Shaw.[45] Hotel employees routinely mop the floor as part of the hotel's business functions. Even if the hotel may have not placed a "wet floor" sign, the wet floor was in an employees-only area, where Hotel 1100 did not expect Plaintiff Shaw to enter. Hotel employees did not cause Plaintiff Shaw to walk across the wet floor or give her permission to do so. And when Plaintiff Shaw fell, hotel employees provided immediate assistance.

Plaintiff does not put forth any evidence to dispute these facts.

Even viewing the facts in the light most favorable to Plaintiff, the Court does not find a genuine dispute of material fact regarding Hotel 1100's willful or wanton conduct towards Plaintiff Shaw. Ohio courts have continuously held that a wet floor or surface is not enough to illustrate

---

[42] *Gladon v. Greater Cleveland Reg'l Transit Auth.*, 662 N.E.2d 287, 319 (Ohio 1996); *McKinney v. Hartz & Restle Realtors, Inc.*, 510 N.E.2d 386, 389 (Ohio 1987).
[43] *McKinney*, 510 N.E.2d at 246.
[44] *Roszman v. Sammett*, 269 N.E.2d 420, 422 (Ohio 1971).
[45] *See* Doc. 17 at 11-16.

-5-

Case No. 1:17-cv-685
Gwin, J.

willful or wanton conduct.[46] Hotel 1100 also never made Plaintiff Shaw walk across the wet floor.[47] Hotel 1100's failure to warn Plaintiff about the wet floor is also not willful or wanton.[48]

Thus, the Court grants summary judgment for Defendant on Count 4.

## B. Negligence (Counts 1 and 2)

The Court also grants summary judgment for Defendant on Plaintiff's negligence claims, Counts 1 and 2.

Plaintiff was not a business invitee to the hotel. Thus, when Plaintiff Shaw entered the hotel, Defendant Hotel 1100 only owed Plaintiff Shaw the duty not to act willfully or wantonly. As explained above, the Court finds that Defendant 1100 did not act willfully or wantonly.

Therefore, the Court grants summary judgment for Defendant Hotel 1100 on Plaintiffs' two negligence claims.

### 1. *Plaintiff Shaw was Not a Business Invitee.*

To establish negligence, a plaintiff must prove the existence of a duty, a breach of the duty, and an injury proximately resulting from that breach.[49] "[T]he existence of a duty in a negligence action is a question of law for the court to determine."[50]

In Ohio, the scope of a landowner's duty depends on a visitor's status when entering onto the property.[51] There are three types of statuses: invitee, licensee, and trespasser.[52]

---

[46] *See, e.g.*, *Newton v. Pa. Iron & Coal, Inc.*, 619 N.E.2d 1081, 1086 (Ohio Ct. App. 1993) (finding slip-and-fall case involving wet floor was "garden variety" so that "willful and/or wanton misconduct could not survive a motion for directed verdict").
[47] *See, e.g.*, *Dove v. John Doe*, No. L-91-079, 1991 Ohio App. LEXIS 5884, at *10 (Ohio Ct. App. Dec. 6, 1991) (no willful or wanton conduct because "[e]ven if the floor was especially slippery, defendant did not actively make Mrs. Dove walk across the tile.").
[48] *See Elliman v. Gombar*, 91 N.E.2d 801, 803 (Ohio Ct. App. 1949) ("[A] mere failure to do something that might obviate the danger to the license creates no liability."); *Coustillac v. Botnick*, No. 9483, 1980 Ohio App. LEXIS 11010, at *5 (Ohio Ct. App. June 4, 1980) (finding defendant's failure to warn a licensee of a hidden danger did not impose liability because "[u]nder Ohio law . . . passive negligence does not give rise to a cause of action on the part of a bare licensee.").
[49] *Texler v. D.O. Summers Cleaners & Shirt Laundry Co*., 693 N.E.2d 271, 274 (Ohio 1998).
[50] *Mussivand v. David*, 544 N.E.2d 265, 270 (Ohio 1989).
[51] *See, e.g.*, *Gladon,* 662 N.E.2d at 291.
[52] *Id.*

Invitees, or business invitees, "are persons who rightfully come upon the premises of another by invitation, express or implied, for some purpose which is beneficial to the owner."[53] A landowner has a duty "to exercise ordinary care and to protect the invitee by maintaining the premises in a safe condition."[54]

However, a landowner owes no such duty of care to non-invitees. For licensees and trespassers, landowners owe only a duty to "refrain from wantonly or willfully causing injury."[55] A licensee enters the property by permission or acquiescence "for his [or her] *own* pleasure or benefit, and not by invitation[.]"[56] A licensee takes the license subject to attendant risks and danger.[57] A trespasser is someone "who, without express or implied authorization, invitation or inducement, enters private premises purely for his [or her] own purposes or convenience."[58]

The Court finds there is no genuine dispute of material fact that Plaintiff Shaw was not a business invitee. She was not invited to the employees-only section of the hotel, and she did not provide a tangible benefit to the hotel during her visit.

### a. Invitation

Plaintiff Shaw was not invited to the hotel.

Defendant Hotel 1100 argues that Plaintiff Shaw was never explicitly invited to the hotel. Even if the conversation between Plaintiff Shaw and Rataj could be construed as an invitation, Plaintiff exceeded the scope of the invitation by entering the employees-only section.[59] Plaintiff, however, argues that her conversation with Rataj can be construed as an implied invitation to visit the hotel, including the employees-only section.[60]

---

[53] *Id.*; *see also Provencher v. Ohio Dep't of Transp.*, 551 N.E.2d 1257, 1258 (Ohio 1990).
[54] *Provencher*, 551 N.E.2d at 1258.
[55] *Id.*; *Elliott v. Nagy*, 488 N.E.2d 853, 854 (Ohio 1986).
[56] *Provencher*, 551 N.E.2d at 1258 (emphasis in original); *see also Gladon,* 662 N.E.2d at 291.
[57] *Fuehrer v. Westerville City Sch. Dist. Bd. of Educ.*, 574 N.E.2d 448, 450 (1991).
[58] *McKinney*, 510 N.E.2d at 246.
[59] Doc. 17 at 11.
[60] Doc. 36 at 5-7.

The status of an invitee is not absolute.[61] Rather, a landlord can limit the scope of its invitation.[62] A visitor is only an invitee insofar as she stays on the land to which the invitation extends and behaves consistent with the invitation's terms.[63]

The test for construing the scope of an invitation is objective.[64] Thus, courts look to how a reasonable person would interpret the purpose for which the land is held open and for which the possessor desires visitors to enter.[65] Relevant considerations include the possessor's conduct, the business conducted on the premises, and the premises' arrangement and design.[66]

Even if Rataj invited Plaintiff Shaw to the hotel, there is no genuine dispute of material fact that Plaintiff Shaw exceeded the scope of her invitation by entering the employees-only section. When Plaintiff entered the kitchen hallway, she was no longer a hotel employee. Plaintiff admits that non-employee visitors were not permitted to enter the employees-only section of the kitchen hallway. Therefore, Plaintiff exceeded the scope of any possible invitation to the hotel.

Plaintiff's arguments about an implied invitation are unpersuasive.

Plaintiff Shaw's and Rataj's conversation regarding Shaw's visit was vague. They never discussed or agreed to a date, time, or hotel location for the meeting.

The hotel also had a strict visitor policy that promoted the hotel's safety concerns. During some of Shaw's employment, the hotel expressly prohibited employees' visitors without prior permission. After June 2015, the hotel lifted the absolute prohibition but strongly discouraged visitors. Nevertheless, visitors always had to follow certain procedures. Plaintiff Shaw, a former employee, would have been subject to the hotel's policy.

---

[61] *Gladon,* 662 N.E.2d at 291-92.
[62] *Id.*
[63] *Id.*
[64] *Conniff v. Waterland, Inc.*, 693 N.E.2d 1127, 1129 (Ohio Ct. App. 1997); *Blair v. Ohio Dep't of Rehab. & Corr.*, 582 N.E.2d 673, 677-78 (Ohio Ct. Cl. 1989).
[66] *Conniff*, 693 N.E.2d at 1129.

Case No. 1:17-cv-685
Gwin, J.

Plaintiff does not dispute the facts of her conversation with Rataj or the hotel policy's provisions. Instead, she argues that the conversation's context and her friendship and past working relationship with Rataj caused Shaw to reasonably believe that Rataj invited Shaw to her hotel office in the employees-only section.[67] She also points to evidence that hotel employees, including herself, did not actually know about the hotel policy.[68]

Plaintiff's arguments fail to defeat summary judgment.

Because determining an invitation's existence requires an objective analysis, Plaintiff's subjective beliefs about her conversation and the hotel policy are not relevant.

There is also no genuine dispute of material fact regarding the hotel policy's enforcement. The hotel manager submitted an affidavit stating that the hotel communicated the visitor policy to all employees; required employees like Shaw to acknowledge receipt and understanding of the policy; and strictly enforced the policy.[69] Two employees, including Rataj, testified that they were aware of and consistently followed the policy.[70] Plaintiff Shaw can only point to one employee, other than herself, who did not know about the policy. But this employee also testified she never had a visitor.[71]

Therefore, based on the undisputed facts of Plaintiff's conversation with Rataj and the hotel policy's existence, we cannot find that a reasonable person in Plaintiff Shaw's position would have concluded she was invited to the hotel, or to the employees-only section. And even if Plaintiff Shaw had an invitation to the hotel, she exceeded its scope.

---

[67] Doc. 36 at 5-6.
[68] *Id.* at 6.
[69] Doc. 17-1 at ¶¶ 17-18; *see also* Doc. 17-7 at 35:13-37:16.
[70] Doc. 17-7 at 14:19-15:12; Doc. 17-13 at 60:23-63:20.
[71] Doc. 36-6 at 40:12-20.

Case No. 1:17-cv-685
Gwin, J.

### b. **Tangible Benefit**

There is also no genuine dispute of material fact that Plaintiff Shaw did not provide a benefit to the hotel during her visit.

The Ohio Supreme Court held that a benefit conferred by a business invitee must take some tangible form, whether economic or otherwise.[72] "Ordinarily, one who comes onto business premises for the purposes of business with, or conferring a benefit on, an employee is a licensee rather than an invitee of the employer."[73] Accordingly, Plaintiff's visit to a hotel employee is not a benefit to Defendant Hotel 1100 that makes her a business invitee.[74]

Plaintiff's citation to *Bowins v. Euclid General Hospital Association* is not persuasive. There, visitors to the hospital's patients were business invitees because they contributed to the patients' wellbeing that was the hospital's primary business.[75] Here, employee morale is not Hotel 1100's primary business. Thus, Shaw's hotel visit to an employee was not done to further Hotel 1100's business and was not a benefit to the hotel.

Moreover, Plaintiff's hotel parking payment during her visit does not create a genuine dispute of material fact. Although the parties dispute whether Plaintiff paid for parking during her visit,[76] this factual dispute is not enough to deny summary judgment. Plaintiff must set forth specific facts to defeat summary judgment.[77]

---

[72] *Provencher*, 551 N.E.2d at 1259 & n.1.
[73] *Posin v. A.B.C. Motor Court Hotel, Inc.*, No. 74AP-556, 1975 WL 181271, at *3 (Ohio Ct. App. Apr. 3, 1975), *aff'd*, 344 N.E.2d 334 (Ohio 1976).
[74] *Carpenter v. Columbus Motor Lodge, Inc.*, 587 N.E.2d 916, 919 (Ohio Ct. App. 1990) (finding that plaintiff's visit to the pool as a benefit to employee morale was "too intangible to merit jury consideration of plaintiff's status"); *Posin*, 1975 WL 181271, at *3 (finding hotel guest who brought beer for hotel employee only conferred an economic benefit on employee, not on hotel).
[75] *Bowins v. Euclid Gen. Hosp. Ass'n*, 484 N.E.2d 203, 205 (Ohio Ct. App. 1984); *see also Rapisarda v. Chagrin Valley Athletic Club*, No. 2001-G-2332, 2001 Ohio App. LEXIS 5648, at *7 (Ohio Ct. App. Dec. 14, 2001) ("*Bowins* . . . held that the visitor of a patient in a hospital was an invitee, although such visitors do not necessarily provide a direct, tangible benefit to the hospital. In arriving at that conclusion, the court noted that no one would patronize a hospital which did not permit visitors and, 'in essence, affording patients visitors is simply part of the business of a hospital.'").
[76] *See* Doc. 36 at 8; Doc. 39 at 10.
[77] *See Matsushita*, 475 U.S. at 587.

Case No. 1:17-cv-685
Gwin, J.

Here, Plaintiff puts forth only her non-specific affidavit to demonstrate she paid for hotel parking during her visit. This affidavit does not actually say that Plaintiff herself, or her agent, paid for her parking.[78] The Court cannot find there is a genuine material dispute of fact on this issue.

Because there is no genuine dispute of fact that Plaintiff was not a business invitee, Defendant need only have not acted willfully or wantonly in causing Plaintiff's injuries. As explained above, there is no genuine dispute of material fact that Defendant Hotel 1100 has done so. Thus, the Court grants summary judgment for Defendant on Plaintiff's negligence claims.

### 2. *Assumption of Risk*

Even if Defendant Hotel 1100 owed Plaintiff a duty of care, it is not liable to Plaintiff Shaw because Shaw assumed the risk that she would be injured.

A plaintiff assumes the risk when she consents to or acquiesces in an appreciated or known risk.[79] "The practicalities of proof require that the defense of assumption of the risk also be applicable where the risk is so obvious that plaintiff must have known and appreciated it."[80]

Defendant argues that even if there is a genuine dispute of material fact whether Plaintiff had actual knowledge of the wet floor, Plaintiff had constructive knowledge.[81] Here, it is undisputed that Plaintiff knew about the wet floor because she had walked across it daily for two years as a former employee. Plaintiff also knew about the mopping schedule. Plaintiff testified that it was "not unusual" for employees to mop the kitchen hallway floor continuously throughout the day, including at the time she fell.

---

[78] Doc. 36-1 at ¶ 5 ("I intended to pay for my parking when I left. When my car was picked up after my fall, the parking was indeed paid.").
[79] *Wever v. Hicks*, 228 N.E.2d 315, 318 (Ohio 1967).
[80] *Id.*
[81] Doc. 17 at 16-18.

Case No. 1:17-cv-685
Gwin, J.

Plaintiff argues that she had not worked at the hotel for nearly a year and a half, and thus no longer had constructive knowledge of the wet floor.[82]

Plaintiff's arguments are not persuasive. Plaintiff remembered the mopping conditions at her deposition, nearly two years after working at the hotel.[83] Plaintiff also cites no authority suggesting that the passage of time eliminates a plaintiff's constructive knowledge.

Rather, Ohio case law supports finding that Plaintiff Shaw had constructive knowledge of the wet floor.[84] Her previous experience with the wet floor suggests she had constructive knowledge of its danger. Despite this knowledge, she chose to walk through the employees-only section to visit Rataj at a time she knew the floor was likely wet. She thus assumed the risk, and Defendant is not liable to Plaintiff for negligence even if it owed Plaintiff Shaw a duty of care.

The Court therefore grants summary judgment for Defendant on Counts 1 and 2.

## C. Nuisance (Count 3)

The Court also grants summary judgment for Defendant on Plaintiff's nuisance claim.

Ohio law recognizes two types of nuisance claims: absolute nuisance and qualified nuisance.[85]

"An absolute nuisance, or nuisance per se, is based on intentional conduct or an abnormally dangerous condition that cannot be maintained without injury to property, no matter what precautions are taken."[86]

---

[82] Doc. 36 at 11-13.
[83] *See* Doc. 17-6 at 33:5-17.
[84] *See Dove*, 1991 Ohio App. LEXIS 5884, at *9-10 (finding constructive knowledge where plaintiff knew floors were often mopped around the same time she fell because she had visited the restaurant on other occasions); *Hill -vs-Fruehauf Co.*, NO. L-82-286, 1983 Ohio App. LEXIS 12416, at *20-21 (Ohio Ct. App. Jan. 28, 1983) (finding constructive knowledge where plaintiff received numerous and explicit warnings at unspecified time which "should have alerted him to the danger"); *Wolfe v. Bison Baseball, Inc.*, 2010-Ohio-1390, P22, 2010 Ohio App. LEXIS 1169, at *15 (Ohio Ct. App. Mar. 31, 2010) (finding constructive knowledge where plaintiff had known about risks from several previous occasions).
[85] *Nottke v. Norfolk S. Ry. Co.*, No. 3:17CV544, 2017 WL 3895120, at *2 (N.D. Ohio Sept. 6, 2017).
[86] *Szuch v. FirstEnergy Nuclear Operating Co.*, 60 N.E.3d 494, 508 (Ohio Ct. App. 2016) (citation omitted).

-12-

"A qualified nuisance, on the other hand, is a lawful act so negligently or carelessly done as to create a potential and unreasonable risk of harm, which in due course results in injury to another."[87] "A qualified nuisance is essentially a tort of negligent maintenance of a condition that creates an unreasonable risk of harm, ultimately resulting in injury [to another]."[88]

As explained above, Defendant Hotel 1100 did not engage in any intentional conduct that caused Plaintiff's injuries. Furthermore, routine floor mopping cannot be considered an abnormally dangerous condition.[89] Therefore, the Court finds that no reasonable factfinder could conclude that Hotel 1100's conduct was an absolute nuisance.

No reasonable factfinder could also conclude that Hotel 1100 created a qualified nuisance.

Because Plaintiff was not a business invitee, the Defendant owed no duty to Plaintiff Shaw other than refraining from willful or wanton conduct. Because Defendant did not commit such willful or wanton conduct, Defendant Hotel 1100 did not engage in a qualified nuisance.[90]

Moreover, there is no qualified nuisance when Plaintiff has knowledge of the supposed danger or that danger is open and obvious to her.[91] As explained above, the Court finds that Plaintiff had constructive knowledge of the wet floor in the employees-only section.

Therefore, the Court grants summary judgment for Defendant on Count 3.

---

[87] *Id.* (citation and quotations omitted).
[88] *State ex rel. R.T.G., Inc. v. State*, 780 N.E.2d 998, 1010 (Ohio 2002).
[89] *See, e.g.*, *Jenkins v. Tower City Ave., L.L.C.*, No. 101759, 2015 WL 3540486, at *4 (Ohio Ct. App. June 4, 2015) (finding that defendant's routine maintenance of door, which fell on plaintiff's head, was not abnormally dangerous).
[90] *See, e.g.*, *Gardner v. Society Nat'l Bank*, 1986 Ohio App. LEXIS 5497, at *7 (Ct. App., Jan. 30, 1986) (finding no qualified nuisance where plaintiff was licensee); *Martter v. Henrick*, 1986 Ohio App. LEXIS 6691, at *3-4 (Ohio Ct. App. May 7, 1986) (no qualified nuisance where defendant owed trespasser plaintiff no duty of care).
[91] *See Estate of Helle v. Hensley*, 2011-Ohio-4279, P33, 2011 Ohio App. LEXIS 3605, at *13 (Ohio Ct. App. Aug. 26, 2011).

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** Defendant's motion for summary judgment.[92]

IT IS SO ORDERED

Dated: September 18, 2017	*s/	James S. Gwin*
	JAMES S. GWIN
	UNITED STATES DISTRICT JUDGE

---

[92] The Court also dismisses this suit against Hilton Garden Inn.